IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

| | | |
|---|---|---|
| TRELLINY TURNER, | * | |
| Petitioner, | * | |
| v. | * | CASE NO. 7:08-CV-90039 HL<br>28 U.S.C. § 2255<br>CASE NO. 7:04-CR-20 -001 HL |
| UNITED STATES OF AMERICA, | * | |
| Respondent. | * | |

## **REPORT AND RECOMMENDATION**

Petitioner Turner was convicted of Conspiring to steal U.S. Mail in violation of 18 U.S.C.§ 371; Theft of U.S. Mail in violation of § 1708; Interstate Transportation of stolen cash in violation of 18 U.S.C.§ 2314; Engaging in Conduct Misleading to law enforcement officers with intent to hinder, delay, or prevent communication of information relating to the commission of a federal offense in violation of 18 U.S.C.§ 1512(b)(3); and Money Laundering in violation of 18 U.S.C.§ 1957.  Turner was sentenced to a total term of 240 months imprisonment.  She directly appealed her convictions and sentence, and the same were affirmed by the United States Court of Appeals for the Eleventh Circuit on January 11, 2007.  (Doc. 193).   Petitioner Turner timely filed the Motion To Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C.§ 2255 presently before the court for determination.

### **Petitioner's Claims**

Petitioner Turner states her **Ground One** claim of ineffective assistance of counsel as:

> My attorney failed to adequately prepare, investigate, and represent me during the trial.  During court proceedings, trial errors occurred when two surprise witnesses (Parish & Thorp) testified to out-of-court statements made by non-testifying co-defendant (William Broxton) implementing me as a co-conspirer and organizer of the theft

>of the U.S. Post Office. Therefore, destroying any possibility to receive a fair trial. My attorney failed to contemporaneously object to either *Bruton* violations and prolonged leading of witness questioning by prosecution. My trial attorney did not prepare or investigate for trial based on his belief that the state did not have a case. He failed to call or subpoena pertinent character witnesses and co-workers. While appeals attorney failed to address ineffectiveness by trial attorney. Counsel denied my constitutional right to receive a fair trial free of legal errors, i.e., a trial free of errors so egregious that they probably caused the conviction.

(Doc. 193 at 4). Petitioner Turner raised the issue of *Bruton* violations on direct appeal and the Eleventh Circuit Court of Appeals determined that, while there was *Bruton* error, the district court made curative instructions to the jury, and that the record failed to show that the *Bruton* error affected the outcome of Turner's trial. (Doc. 193 at 30). Moreover, the Court recounted an "overwhelming" amount of evidence, independent of the *Bruton* error, presented by the Government in support of Turner's convictions, as follows:

>From the start, it was evident that the theft of this Post Office was an "inside job." Turner, as a longtime postal employee in Valdosta, had access to <u>all</u> of the required inside information, including the date on which a significant amount of money and valuables would be in the registry, when the post office would be guarded by only one employee (an elderly employee with poor eyesight), and the combination to the interior door.
>
>In addition to her inside knowledge, her conduct in the days immediately following the robbery strongly supports the conclusion that she was a knowing participant in the scheme. According to her co-workers, during her late-night shift that started just over an hour after the robbery, Turner was "nervous" and "jumpy" and even asked questions about the postal investigators' success rate in such cases and the inspectors' ability to access suspects' financial records.
>
>In the early morning on the day after the robbery, Turner embarked on a 36-hour road trip, which she claimed was unexpected, traveling round-trip from Georgia to New Jersey via Maryland with only two very brief stops. Other evidence supporting the jury's verdict includes the facts that Turner's annual gross income was $36,796, she had just declared bankruptcy a few months before the theft,

and Turner's check registry "consistently kept negative balances" until September 7th, just days after the theft.

In addition, the jury also heard about Broxton's and Turner's numerous and large cash expenditures soon after the robbery. Notably, Turner accompanied Broxton during the all-cash purchase of the $13,000 Suburban on September 25th. Although she was not at the New Jersey dealership on September 5th, when Broxton bought the Ford Explorer for $18,500 in cash, the jury easily could have inferred that she knew at least that the vehicle was improperly titled based on her false statements during the September 22nd traffic stop of Broxton, when Turner said that her name was "Brenda Lynch" and that she was the owner of the Ford Explorer.

Moreover, on October 6th, it was Turner who went to Broxton's former attorney's office and made an all-cash payment in the amount of $2,975 for outstanding fees. While it is not clear if Turner was at the Zales store on September 16th, when Broxton purchased an engagement ring for Turner with cash, it is quite apparent that she knew about the purchase itself because, when the postal inspectors came to search her house, she said that she was getting married and, during her own testimony, recanted her claim that she could not remember receiving the Zales engagement ring, instead suggesting that she had received a different ring from Broxton.

The government also presented substantial evidence obtained in the course of the postal inspectors' search of Turner's house and subsequent investigation of Turner, during which investigators installed a tracking device on her vehicle. Perhaps most significant, the investigators discovered a backpack, in the master bedroom Turner shared with Broxton, only partially wedged between a mirror and the wall and apparently visible upon entering the room. The backpack contained, $9,780 in cash bearing notable ink and marks consistent with U.S. Postal Service stamps. ...

The government also played several jailhouse recordings of Turner's and Broxton's telephone calls, in which they discussed "never saying anything" against each other, opening fire on federal agents who had searched Turner's house, and fleeing the country and assuming new identities.

In addition, Turner's own trial testimony, which was largely incredible, internally inconsistent, and flatly contradicted by other evidence presented throughout the trial, may properly be considered by the jury and this Court as substantive evidence. ...

Turner's testimony also was internally inconsistent on numerous points. Thus, for example, when asked about the jailhouse recordings of her telephone conversations with Broxton, Turner first

3

> claimed that she did not remember having the conversations. She then suggested that she could not recognize her own voice, since it sounded like her mother's, daughter's, and sister's voices. Finally during redirect examination, Turner proceeded to change this testimony concerning the jailhouse recordings. She likewise recanted her testimony that she could not remember when Broxton gave her the engagement ring.
>
> "[W]hen a defendant chooses to testify, [s]he runs the risk that if disbelieved the jury might conclude the opposite of [her] testimony is true." *United States v. Brown,* 53 F.3d 312, 314 (11th Cir.1995) (internal quotation marks and citation omitted). Like the defendant in *Brown,* Turner testified that she had no knowledge of the illegal conspiracy and also claimed she did not notice anything suspicious during her encounters with the other conspirators. As we observed in *Brown,* "the jury, hearing [the defendant's] words and seeing [her] demeanor, was entitled to disbelieve [her] testimony and, in fact, to believe the opposite of what [she] said." *Id.*
>
> Here there was overwhelming evidence, apart form the *Bruton*-offending testimony, of Turner's involvement in the conspiracy.

(Doc. 193 at 30-35). Wherefore, the foregoing findings and observations by the United States Court of Appeals for the Eleventh Circuit demonstrates that the government carried its burden of proof by substantial evidence beyond a reasonable doubt that Turner was guilty of the offenses of which she was convicted notwithstanding the *Bruton* error. Therefore, trial counsel's failure to object to the *Bruton*-offending testimony did not affect the outcome of Petitioner's trial. Petitioner cannot show that the prejudice prong of the *Strickland*[1] standard was violated.

Petitioner Turner's **Ground Two** claim in her § 2255 Motion is the same claim of unreasonable departure and incorrect application of guidelines in sentencing as she presented to the United States Court of Appeals for the Eleventh Circuit on her direct appeal. The Court did not find

---

[1] To establish a claim for relief based upon ineffective assistance of counsel, Petitioner must meet the two pronged test of *Strickland v. Washington,* 466 U.S. 668, 104 S. Ct. 2052 (1984). (1) Petitioner must show that her counsel's representation was deficient and (2) Petitioner must show that this deficient representation prejudiced Petitioner. *Strickland,* at 687.

4

that the district court's sentencing rationale was unreasonable, but rather found that the district court calculated the advisory guideline range correctly and properly considered the statutory sentencing factors of 18 U.S.C.§ 3553(a). (Doc. 193 at 35-39).

The district court is not required to reconsider claims of error that were raised and disposed of on direct appeal. *United States v. Rowa,* 663 F.2d 1034, 1035 (11th Cir. 1981). "[O]nce a matter has been decided adversely to a defendant on direct appeal it cannot be re-litigated in a collateral attack under section 2255." *United States v Natelli,* 553 F.2d 5, 7 (2nd Cir. 1997).

As her **Ground Three** claim, Petitioner Turner alleges "insufficient evidence for the conviction of money laundering and misleading statements." (Doc. 193 at 7). While this issue was not raise in the same terms before the United States Court of Appeals for the Eleventh Circuit on Petitioner's direct appeal, the Court found that the evidence, as restated above, was sufficient to support Turner's conviction of Money Laundering. This issue has no merit and cannot be relitigated here. *See United States v Natelli,* 553 F.2d 5, 7 (2nd Cir. 1997). Moreover, even if this issue had any merit, its not having been raised on direct appeal effects a procedural default. In *Mills v. United States,* 36 F.3d 1052, 1055 (11th Cir. 1999), the Court held, "Generally speaking, an available challenge to a criminal conviction or sentence must be advanced on direct appeal or else it will be considered procedurally barred in a § 2255 proceeding." *See also Greene v. United States,* 880 F.2d 1299, 1305 (11th Cir. 1989), *cert. denied*, 494 U.S. 1018, 110 S.Ct. 1322 (1990).

Petitioner states her final claim, as her **Ground Four,** that the district court committed error in its calculation of the amount of restitution ordered along with her sentence. She adds that her appellate attorney did not properly represent her on appeal to raise this issue. Petitioner's Ground Four claim regarding restitution is not appropriate to her Motion To Vacate, Set Aside, or Correct

5

Sentence. A *pro se* federal prisoner may not utilize a § 2255 Motion to Vacate Sentence to challenge her restitution order. *Mamone v. United States,* No.07-14953 (11th Cir. Feb.27, 2009).

**WHEREFORE, IT IS RECOMMENDED** that Petitioner's Motion To Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 be DENIED. Pursuant to 28 U.S.C. § 636 (b)(1), Petitioner and/or the Government may serve and file written objections to this Recommendation with the UNITED STATES DISTRICT JUDGE, WITHIN TEN (10) DAYS after being served with a copy hereof.

**SO RECOMMENDED** this 31st day of March 2009.

        S/ G. MALLON FAIRCLOTH
        **UNITED STATES MAGISTRATE JUDGE**